Although I concur with the opinion of my colleagues, the conduct of trial counsel was so disturbing that it necessitates additional comment. From the selection of the jury to closing arguments, the transcript of proceedings reveals a lack of professionalism and acrimony that forced me to recall the words of Federal Judge Wayne E. Alley (U.S. Dist. Ct. for the Western Dist. Of Oklahoma):
 "I suppose counsel have a penumbral Constitutional right to regard each other as schmucks, but I know of no principle that justifies litigation pollution on account of their personal opinions. This case makes me lament the demise of duelling."[1]
In the case at bar, the following excerpts illustrate the flavor of the trial conduct of the prosecutor:
 "I sat down with him [defense counsel] * * * and answered every one of his ridiculous questions." (Tr. p. 20).
 "Joe [referring to defense counsel], God damn it. * * * I'm going to punch your — " (Tr. p. 123).
However, the conduct of the prosecutor becomes exemplary when compared to the conduct of defense counsel:
 1. "This prosecutor or whatever he is * * *." (Tr. p. 17).
 2. "If he [the prosecutor] doesn't know how to ask questions, he shouldn't be trying this case." (Tr. p. 120).
 3. [At the conclusion of his examination of a witness, defense counsel states to the prosecutor]: "Now go ahead and badger him." (Tr. p. 222).
4. Prosecutor: "Okay. What did — "
Defense counsel: "Object."
Prosecutor: "I didn't even ask the question."
 Defense counsel: "I don't care." (Tr. p. 114)
5. Prosecutor: "Objection."
Defense counsel: "Oh, be quiet."
 Defense counsel to witness: "Say it again. This guy rudely interrupted you. See the kind of guy you deal with * * *." (Tr. p. 220)
Moreover, defense counsel's behavior was often as bizarre as it was combative. For example, during the jury voir dire, appellant's counsel made the following comments:
 "* * * I will now move the first cheap trick because I couldn't sit at my counsel table. I couldn't see you * * *.
 Number two cheap trick is sympathy. Since it was interjected, okay, I didn't want to do this but because Simpson [O.J.] had money he got off. Right? I was appointed by this court. I'm the third attorney. This is probably my hundred and twentieth jury trial, felony jury trial. I practiced all over. Matter of fact, I want to give each and everyone of you my card * * *." Tr. p. 48).
* * *
 "And its always my client who is with the wrong crowd. Honest folks. I never found that wrong crowd. It's thirty-five years now. Its always the wrong crowd." (Tr. p. 53).
 COURT: "You [defense counsel] want me to excuse her [prospective juror] for cause?"
* * *
COURT: "Okay. I'll excuse her."
Defense counsel: "I'll pre-empt her then."
COURT: "I'm going to excuse her."
 Defense counsel: "I'll take exception to the ruling." (Tr. p. 72).
Strange behavior, outrageous comments, or an abrasive personality, however, do not necessarily mean that the defendant was deprived of a fair trial. Since the record clearly shows a zealous defense offered on behalf of appellant by his trial counsel, I cannot find that he was inadequately represented — even though I have serious reservations about some of the tactics used, or comments made. Accordingly, I concur with my colleagues.
However, I must respectfully urge that legal counsel who tried this matter remember that it is our legal system, with its emphasis on fairness, individual rights and duties to our fellow man, that necessitates respectful behavior in our courtroom — regardless of personality clashes. To act otherwise, sullies the memory of those who sacrificed to preserve that system and dishonors an institution that is far greater than any of its individual practitioners.
 ___________________________________ JOSEPH J. VUKOVICH, JUDGE
[1] Judge Alley's comments were set forth in the October 1997 issue of the National Conference of Bankruptcy Judges News which cited comments as being from: "4310 Partnership v. NationalProperties, Inc."